## LATTIN *v*. LATTIN'S ESTATE.

ESTATES OF DECEDENTS—CLAIMS—EVIDENCE—SUFFICIENCY.

In a claim against the estate of decedent, based upon certain certificates of deposits, evidence examined, and *held*, insufficient to support the claim, and a verdict was properly directed for defendant.

Error to Oceana; Sessions, J. Submitted January 21, 1909. (Docket No. 160.) Decided April 6, 1909.

Henry Lattin presented a claim against the estate of Sylvester Lattin, deceased, for moneys claimed to belong to claimant. The claim was disallowed in the probate court, and claimant appealed to the circuit court. There

was judgment for defendant on a verdict directed by the court, and claimant brings error. Affirmed.

*F. E. Wetmore* and *Wallace Foote,* for appellant.

*C. B. Stevens* and *Fred J. Russell,* for appellee.

Blair, C. J. Claimant, a brother of deceased, filed the following claim against his estate:

> "In the matter of the estate of Sylvester Lattin, deceased;
> Henry Lattin, claimant.
>
> "To money deposited in the banks in the village of Hart, on or about January 15th, 1902, and afterwards drawn out by the said Sylvester Lattin, which said money belonged to the above named claimant _____ $2,000 00
> "To interest on above sum _____ 350 00
>
> $2,350 00"

The claim was disallowed by the probate court, and an appeal taken to the circuit court, wherein the following bill of particulars was filed:

> "1902, Jan. 21.  To amount due claimant from said Sylvester Lattin, on account stated between them _____ $2,000 00
> "1902, Jan. 21.  To balance due claimant _____ 2,000 00
> "1902, Jan. 21.  To certificate of deposit belonging to claimant, which was dated Jan. 21, 1902, which was collected by said Sylvester Lattin, Jan. 21, 1903 ____ _____ 1,000 00
> "1902, March 24.  To certificate of deposit belonging to claimant, dated March 24, 1902, and which was presented and collected by the said Sylvester Lattin on the 24th day of March, 1903 _____ _____ 1,000 00
> "July 19, 1905.  To interest to date _____ 350 00"

At the conclusion of claimants' proofs, the circuit judge directed a verdict for defendant, saying:

> " In my judgment there is no evidence in this case which would warrant you in rendering a verdict against this estate. The claim is upon two certificates of deposit, and there is no evidence in the case that shows that those certificates

of deposit or either of them ever belonged to this claimant, were ever in his possession, or that he ever had any interest in them in any way, shape, or manner, and in my judgment there is no theory upon which this claimant, under the evidence in this case, would recover, and your verdict will be for the defendant."

Claimant has brought the case to this court for review upon writ of error, and the sole question for our consideration is whether there was any evidence to sustain the claim which should have taken the case to the jury. Claimant put in evidence three certificates of deposit, as follows:

"Exhibit A. is:
"'Citizens' Exchange Bank, No. 17773, Hart, Mich., Jan. 21, 1902, $1,000.00.  [Then above it the figures, "$25.00."]   S. Lattin has deposited in this bank one thousand dollars, payable to Henry Lattin, or bearer, on the return of this certificate properly indorsed.
"'A. S. WHITE.'
"And stamped upon the face of it is:  'Paid Jan. 21st, 1903.  Citizens' Exchange Bank.'   And placed upon it with a rubber stamp is: 'Upon 30 days' notice if desired by the bank, with interest at $2\frac{1}{2}$ per cent. per annum, for all full months, if left six months.   Interest to cease after one year.'"

"Exhibit B: 'Citizens' Exchange Bank, Hart, Michigan.   January 21st, 1903.   $2,000.00.   S. Lattin has deposited in this bank $2,000.00, payable to Sarah Jane Stewart or bearer, on the return of this certificate, properly indorsed.
[Signed]   "'A. S. WHITE,' and on the back is, 'S. Lattin.'"

"Exhibit C: 'Citizens' Exchange Bank, Composed of A. S. White, F. J. Russell and J. K. Flood, Copartners, Hart, Michigan, March 24th, 1902.   $1,000.00.   [And in ink above it, "Interest paid $25.00."]   S. Lattin has deposited in this bank one thousand dollars, payable to the order of Henry Lattin, on the return of this certificate properly indorsed.
[Signed]   "'A. S. WHITE.'   And on the face of it is stamped:  'Paid March 24th, 1903.   Citizens' Exchange Bank, Hart, Michigan.'   On the back appears:  'Pay to

S. Lattin.    Henry Lattin'—and below is the signature of
S. Lattin."

Exhibit A was paid by being included in Exhibit B,
which was afterwards paid to Sylvester Lattin, and Ex-
hibit C was also paid to him.    The $25 in Exhibits A and
C represented interest paid on the certificates.

Horace Lattin testified, in substance, that some time in
the fall of 1903 Sylvester sent him to the bank with a cer-
tificate of deposit for $500, payable to Sarah Jane Stowitts
(whom we take to be the same person as "Sarah Jane
Stewart"), a sister, with instructions to collect the inter-
est, but the banker counted out to him the principal and
interest, and on his return to Sylvester:

"I said:  'Mr. Mathews tells me that you wrote him
to pay me the within amount.'  'Well,' he says, 'Horace,
I was careless.  I should have said the interest on the
within amount.'  And from that I says:  'What was the
object in putting this in Sarah Jane's name?'  He says:
'Simply because it was hers.'

"Q. Who did you mean by Sarah Jane?

"A. Our youngest sister, Mrs. Sarah Jane Stowitts.

"Q. What further was said?

"A. He says:  'It is her money, and that is why I put
it there.  It is her money and not mine.'  Then I said,
'now, this is embarrassing, but I will state it,' I says:
'Did you put this money there to save taxes?'  And he
says:  'No, sir; I put it in there because it is her money,
and not mine.  I put it in there for her, also, I have the
same amount,' he says, 'in the bank belonging to our
brother Henry, and also to our sister Marietta Herrick,
of Carson City, Nev.'  *  *  *  At the time I took the
certificate of deposit to the bank, in the fall of 1903, and
drew the interest on it, Sylvester told me that he was
going to make each of us, all his living brothers and
sisters, a present.  I don't think he stated the amount.
He had made the same statement to me at a previous
time.  *  *  *  I said that he said—at least I intended to
have said these words—that he says, 'Horace, I have put
the same amount of money in the bank for our brother
Henry and Marietta,' and I says, 'Did you do this to
save taxes?'  And he says, 'No; I did it because it is
their money, and not mine.'  *  *  *

"*Q.* How do you know that certificate that you took to the bank was made out in the name of Sarah J. Stowitts?

"*A.* Because Mr. Mathews told me so, and my brother told me so after I returned to his place.

"*Q.* He stated to you at that time that this $500 that was deposited here in the name of Sarah J. Stowitts—I am not putting this exactly as I want to, but he stated that he had deposited in the bank an equal amount for Henry Lattin?

"*A.* He did."

He also testified that about 1899 he had a talk with Sylvester.

"He told me he was loaning money for my brother Henry and for my sister Sarah Jane especially, and, it seems to me, others, and I have tried today noon to think, but I cannot remember who it was he told me, but I know he told me those two.  *   *.   *

"*Q.* He told you how much he was loaning for them, I suppose, at that time?

"*A.* I don't remember whether he did or not."

Sylvester Lattin died July 28, 1904.

We concur in the opinion of the circuit judge that there was no evidence to support the claim. The testimony of Horace does not tend to show that the certificates belonged to Henry. The most that can be claimed for Horace's testimony is an acknowledgment by Sylvester in the fall of 1903 that he had put $500 in the bank, which belonged to Henry, and "that he was loaning money for different parties," and an acknowledgment in 1899 that he was loaning money for Henry. The certificates of deposit never came to the possession of Henry, but were retained and used by Sylvester as though they were his own property. No checks or drafts passed through the bank between the two. There was no evidence of the payment of any interest by Sylvester to Henry, nor of any correspondence between them. The alleged conversation in the fall of 1903, although after the making of the certificates, related to deposits of $500 for Sarah Jane, Marietta, and Henry, and the books of the bank showed no such de-

posits.    The alleged fact that in 1899 Sylvester was loaning some indefinite sum of money for Henry was not sufficient to connect the certificates of deposit with such loan, in view of the fact that they never left Sylvester's possession, and were used as his own.    It is clear that there was no executed gift of the certificates, and, apart from the alleged admissions of Sylvester of facts which, for the most part, did not exist, there was no evidence that he ever had any money from Henry.

The judgment is affirmed, with costs against the appellant.

GRANT, MONTGOMERY, MOORE, and McALVAY, JJ., concurred.